FILED

UNITED STATES DISTRICT COURT AUG 25 PM 5: 25
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 2:21-cr-74- JLB- MRM

AMBER REWIS BRUEY and                      18 U.S.C. § 1349
ANTHONY JAMES BRUEY                        18 U.S.C. § 1343
                                           18 U.S.C. § 1956(h)
                                           18 U.S.C. § 1957

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

### A.    Introduction

At all times material to this Indictment:

1.     AMBER REWIS BRUEY was a resident of the Middle District

of Florida ("MDFL") and was married to ANTHONY JAMES BRUEY

(collectively "the BRUEYS"). Together with her husband, AMBER REWIS

BRUEY owned and operated Bruey & Sons, LLC, a Florida corporation

registered to the BRUEYS' residence that purportedly operated as a

handyman and repair business. She was also the owner and operator of the

purported business entities "Amber Bruey," "Amber Rewis Bruey," and

"Beach Bumz Designs." AMBER REWIS BRUEY was on state probation in

1

St. Lucie County, Florida case number 2018CF000164.

2.     ANTHONY JAMES BRUEY was a resident of the MDFL and was married to AMBER REWIS BRUEY. ANTHONY JAMES BRUEY co-owned and co-operated Bruey & Sons, LLC with his wife. He was also the owner and operator of the purported business entity "Anthony Bruey." ANTHONY JAMES BRUEY was on probation in St. Lucie County, Florida case number 2016CF001832.

3.     The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

The Paycheck Protection Program

4.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other

2

expenses, through a program referred to as the Paycheck Protection Program ("PPP").

5.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. Individuals who operated under a sole proprietorship or as an independent contractor or eligible self-employment individual were also eligible to apply for a PPP loan.

6.      A PPP applicant was required to disclose whether the applicant (if the loan was for an individual) or an owner of the applicant business had been convicted of a felony or had served a term of probation within the last five years.

3

7.       PPP loan applications were processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8.       PPP loan proceeds were required to be used for certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

The Economic Injury Disaster Relief Program

9.       The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10.       The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses

4

within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

11.     To obtain an EIDL and advance, a qualifying business had to submit an application to the SBA and provide information about its operation, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. An EIDL applicant was required to disclose whether the applicant had been convicted of a felony or had served a term of probation within the last five years. The applicant also had to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

12.     EIDL applications were submitted directly to the SBA. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rents, and mortgage payments. If the applicant also obtained a

5

loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

PPP Lenders

13.     Lender 1 was a non-bank real estate and small business lender based in New York, New York. Lender 1 participated in the SBA's PPP as a lender and approved and serviced PPP loans on behalf of Lender 2.

14.     Lender 2 was a federally-insured financial institution based in Phoenixville, Pennsylvania that participated in the SBA's PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

15.     Lender 3 was a federally-insured financial institution based in Salt Lake City, Utah that participated in the SBA's PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

16.     Lender 4 was a federally-insured financial institution based in San Antonio, Texas that participated in the SBA's PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

17.     Company 1 was a publicly traded company that processed credit card payments, provided retail point-of-sale payment platforms, and offered small-business lending. Company 1 was based in San Francisco, California. Company 1 participated in the SBA's PPP by, among other things, acting as a service provider between small businesses and certain banks, including Lender

6

3. Small businesses seeking PPP loans could apply through Company 1 for PPP loans. Company 1 would review the loan applications. If a loan application received by Company 1 was approved for funding, a partner bank, such as Lender 3, disbursed the loan funds to the applicant.

Bank Accounts Controlled by the Defendants

18.     Banks 1, 2, and 3 were federally-insured financial institutions while Bank 4 was a financial technology company that provided banking services and partnered with financial institutions that were insured by the FDIC.

19.     THE BRUEYS, individually and together, controlled and maintained the following financial accounts:

a.     A checking account ending in -9936 at Bank 1 in the name of "Bruey & Sons" ("Bank 1 account ending in -9936"), with AMBER REWIS BRUEY as the sole signatory;

b.     A checking account ending in -8239 at Bank 2 in the name of "Bruey & Sons LLC" ("Bank 2 account ending in -8239") with AMBER REWIS BRUEY as the sole signatory;

c.     A checking account ending in -8067 at Bank 3 in the name of "Amber Bruey" ("Bank 3 account ending in -8067") with AMBER REWIS BRUEY as the sole signatory;

     d.     A checking account ending in -5823 at Bank 3 in the name of "Amber Bruey" ("Bank 3 account ending in -5823") with AMBER REWIS BRUEY as the sole signatory;

     e.     A checking account ending in -3607 at Bank 4 in the name of "Amber Bruey" ("Bank 4 account ending in -3607") with AMBER REWIS BRUEY as the sole signatory;

     f.     The Bank 1 account ending in -9936 with ANTHONY JAMES BRUEY as the sole signatory;

     g.     The Bank 2 account ending in -8239 with ANTHONY JAMES BRUEY as the sole signatory;

     h.     A checking account ending in -5576 at Bank 4 in the name of "Anthony Bruey" ("Bank 4 account ending in -5576") with ANTHONY JAMES BRUEY as the sole signatory.

## B.    The Conspiracy

20.    Beginning on an unknown date, but no later than in or around April 2020, and continuing through and including the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

AMBER REWIS BRUEY and
ANTHONY JAMES BRUEY,

did knowingly and willfully combine, conspire, confederate and agree, with one another and with others, both known and unknown to the Grand Jury, to

8

commit wire fraud, in violation of 18 U.S.C. § 1343.

### C.   Manner and Means of the Conspiracy

21.   The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a.   It was part of the conspiracy that the conspirators would and did engage in a scheme to obtain money from the SBA and PPP lenders by submitting false and fraudulent EIDL and PPP loan applications to the SBA, Lender 1, Lender 4, and Company 1.

b.   It was further part of the conspiracy that conspirators would and did make and cause to be made materially false and fraudulent statements to the SBA in EIDL applications, including false and fraudulent representations regarding the dates of operation of the loan applicant, falsely stating the number of persons employed by the loan applicant, and falsely representing the applicant's gross revenues and cost of goods sold.

c.   It was further part of the conspiracy that conspirators would and did make and cause to be made materially false and fraudulent statements to Lender 1, Lender 4, and Company 1 in PPP loan applications, including false and fraudulent representations regarding the applicant's average monthly payroll.

9

d.     It was further part of the conspiracy that conspirators would and did make and cause to be made materially false and fraudulent statements to the SBA, Lender 1, Lender 4, and Company 1 in EIDL and PPP loan applications, including false and fraudulent representations that the applicant had not been convicted of a felony or served a term of probation in the last five years.

e.     It was further part of the conspiracy that conspirators would and did submit and cause the submission of materially false and fictitious documents to the SBA, Lender 1, Lender 4, and Company 1 in support of their fraudulent EIDL and PPP loan applications, including false and fictitious federal income tax documents.

f.     It was further part of the conspiracy that conspirators would and did falsely certify that the PPP funds acquired from the requested loans would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments on behalf of the applicants.

g.     It was further part of the conspiracy that conspirators' materially false, fraudulent, and misleading representations would and did cause the SBA, Lender 1, Lender 4, and Company 1 to approve at least 6 EIDL applications and 6 PPP loan applications, resulting in the SBA, Lender 2, Lender 3, and Lender 4 depositing approximately $881,058.35 in EIDL and

10

PPP funds into accounts controlled by the conspirators.

       h.    It was further part of the conspiracy that the conspirators would and did open and cause the opening of bank accounts at Bank 2, Bank 3, and Bank 4 for the purpose of receiving EIDL and PPP proceeds.

       i.    It was further part of the conspiracy that conspirators would and did share in, use, and cause EIDL and PPP funds to be used for unauthorized purposes and for their own personal enrichment, including purchases of a residence in North Carolina, a 2019 GMC Yukon SUV, a 2020 Honda Talon, and a $23,566 restitution payment for criminal court case number 2018CF000164.

       j.    It was further part of the conspiracy that conspirators would and did perform acts and make statements to promote and achieve the objects of the conspiracy and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

In violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH ELEVEN
### (Wire Fraud)

### A.    Introduction

1.    The Grand Jury hereby realleges Paragraphs 1 through 19 of Count One of this Indictment and incorporates such paragraphs by this

reference as though fully set forth herein.

## B.     The Scheme and Artifice

2.     Beginning on an unknown date, but no later than in or around April 2020, and continuing through the present, in the Middle District of Florida and elsewhere, the defendant,

AMBER REWIS BRUEY,

knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## C.     Manner and Means of the Scheme and Artifice

3.     The manner and means of the scheme and artifice are set forth in Paragraph 21 of Count One of this Indictment, the allegations of which are realleged and incorporated by reference as if fully set forth herein.

## D.     Execution of the Scheme and Artifice

4.     On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

AMBER REWIS BRUEY,

for the purpose of executing the scheme and artifice described above, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and

sounds described below, each transmission constituting a separate count:

| COUNT | DATE OF WIRE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| TWO | April 2, 2020 | Electronic transmission of fraudulent EIDL application in the name of Bruey and Sons from the MDFL to the SBA's servers located outside the State of Florida |
| THREE | April 3, 2020 | Electronic transmission of fraudulent EIDL application in the name of Beach Bumz Designs from the MDFL to the SBA's servers located outside the State of Florida |
| FOUR | April 12, 2020 | Electronic transmission of fraudulent PPP loan application in the name of Amber Bruey from the MDFL to Lender 1's servers located outside the State of Florida |
| FIVE | May 4, 2020 | Electronic transmission of fraudulent PPP loan application in the name of Amber Bruey from the MDFL to Lender 4's servers located outside the State of Florida |
| SIX | May 5, 2020 | Electronic transmission of fraudulent PPP loan application in the name of Amber Rewis Bruey from the MDFL to Lender 4's servers located outside the State of Florida |
| SEVEN | May 6, 2020 | Electronic transmission of fraudulent PPP loan application in the name of Bruey and Sons from the MDFL to Lender 4's servers located outside the State of Florida |
| EIGHT | May 15, 2020 | Electronic transmission of fraudulent PPP loan application in the name of Amber Bruey from the MDFL to Company 1's servers located outside the State of Florida |
| NINE | May 18, 2020 | Electronic transmission of fraudulent EIDL application in the name of Amber Bruey from the MDFL to the SBA's servers located outside the State of Florida |

13

| **TEN** | June 16, 2020 | Electronic transmission of fraudulent EIDL application in the name of Amber Bruey from the MDFL to the SBA's servers located outside the State of Florida |
|---|---|---|
| **ELEVEN** | June 24, 2020 | Electronic transmission of fraudulent EIDL application in the name of Bruey & Sons from the MDFL to the SBA's servers located outside the State of Florida |

In violation of 18 U.S.C. §§ 1343, 1349, and 2.

## COUNTS TWELVE AND THIRTEEN
### (Wire Fraud)

### A.    Introduction

1.      The Grand Jury hereby realleges Paragraphs 1 through 19 of

Count One of this Indictment and incorporates such paragraphs by this

reference as though fully set forth herein.

### B.    The Scheme and Artifice

2.      Beginning on an unknown date, but no later than in or around

April 2020, and continuing through the present, in the Middle District of

Florida and elsewhere, the defendant,

ANTHONY JAMES BRUEY,

knowingly devised and intended to device a scheme and artifice to defraud,

and to obtain money and property by means of materially false and fraudulent

pretenses, representations, and promises.

14

**C.**   **Manner and Means of the Scheme and Artifice**

3.      The manner and means of the scheme and artifice are set forth in Paragraph 21 of Count One of this Indictment, the allegations of which are realleged and incorporated by reference as if fully set forth herein.

**D.**   **Execution of the Scheme and Artifice**

4.      On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

ANTHONY JAMES BRUEY,

for the purpose of executing the scheme and artifice described above, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, each transmission constituting a separate count:

| COUNT | DATE OF WIRE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| **TWELVE** | April 26, 2020 | Electronic transmission of fraudulent PPP loan application in the name of Anthony Bruey from the MDFL to Company 1's servers located outside the State of Florida |
| **THIRTEEN** | May 19, 2020 | Electronic transmission of fraudulent EIDL application in the name of Anthony Bruey from the MDFL to the SBA's servers located outside the State of Florida |

In violation of 18 U.S.C. §§ 1343, 1349, and 2.

15

## COUNT FOURTEEN
### (Conspiracy to Commit Money Laundering)

### A. Introduction

1.     The Grand Jury hereby realleges Paragraphs 1 through 19 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B. The Conspiracy

2.     Beginning on an unknown date, but no later than in or around April 2020, and continuing through the present, in the Middle District of Florida and elsewhere, the defendants,

> AMBER REWIS BRUEY and
> ANTHONY JAMES BRUEY,

did knowingly combine, conspire, and agree with each other and other persons known and unknown to the Grand Jury to commit certain offenses against the United States, in violation of 18 U.S.C. § 1957, to wit: to knowingly engage and attempt to engage in monetary transactions in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, which property was, in fact, derived from a specified unlawful activity, namely, wire fraud, in violation of 18 U.S.C. § 1343.

C.    **Manner and Means**

3.    The Grand Jury realleges Paragraph 21 of Count One of this Indictment and incorporates such paragraph by this reference as though fully set forth herein.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS FIFTEEN AND SIXTEEN
### (Illegal Monetary Transactions)

### A.  Introduction

1.    The Grand Jury hereby realleges Paragraphs 1 through 19 and 21 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B.  Offense

2.    On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendants,

AMBER REWIS BRUEY and
ANTHONY JAMES BRUEY,

did knowingly engage and attempt to engage in the monetary transactions described below, and aided and abetted each other and others in engaging in the monetary transactions described below, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, which property was, in fact, derived from a specified unlawful

17

activity, namely, wire fraud, in violation of 18 U.S.C. § 1343, specifically:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| FIFTEEN | June 5, 2020 | $29,214.93 check from the Bank 1 account ending in -9936 issued to Sun Sports Cycle for the purchase of a Honda Talon and Yamaha dirt bike. |
| SIXTEEN | August 27, 2020 | $211,457.57 wire transfer from the Bank 3 account ending in -5823 to a law firm for the purchase of a residence in North Carolina. |

In violation of 18 U.S.C. §§ 1957 and 2.

## COUNTS SEVENTEEN AND EIGHTEEN
### (Illegal Monetary Transactions)

### A. Introduction

1.      The Grand Jury hereby realleges Paragraphs 1 through 19 and 21 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

### B. Offense

2.      On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendants,

AMBER REWIS BRUEY,

did knowingly engage and attempt to engage in the monetary transactions described below, and aided and abetted others in engaging in the monetary transactions described below, in and affecting interstate and foreign

18

commerce, in criminally derived property of a value greater than $10,000.00,

which property was, in fact, derived from a specified unlawful activity,

namely, wire fraud, in violation of 18 U.S.C. § 1343, specifically:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| **SEVENTEEN** | July 22, 2020 | $23,566 cashier's check from the Bank 1 account ending in -9936 issued to JPay for the payment of restitution for criminal case number 2018CF000164. |
| **EIGHTEEN** | August 11, 2020 | $49,688.55 electronic funds transfer to Carvana from the Bank 1 account ending in -9936 for the purchase of a 2019 GMC Yukon SUV. |

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1.    The allegations contained in Counts One through Eighteen are
incorporated by reference for the purpose of alleging forfeiture pursuant to 18
U.S.C. §§ 981(a)(1)C and 982(a)(1), and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 18 U.S.C. § 1343, or a
conspiracy to violate 1343, in violation of 18 U.S.C. § 1349, the defendants,

AMBER REWIS BRUEY and
ANTHONY JAMES BRUEY,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28
U.S.C. § 2461(c), any property, real or personal, which constitutes or is
derived from proceeds traceable to the offense.

19

3.    Upon conviction of a violation of 18 U.S.C §§ 1956 or 1957, or a conspiracy to violate 18 U.S.C §§ 1956 or 1957, the defendants,

AMBER REWIS BRUEY and
ANTHONY JAMES BRUEY,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

5.    The property to be forfeited includes, but is not limited to, the following:

    a.    an order of forfeiture in the amount of approximately $881,058.35, which represents the proceeds obtained from and involved in the offenses;

    b.    a 2019 GMC Yukon XL, VIN: 1GKS2GKCXKR353450, registered to and owned by Amber Bruey;

    c.    a 2021 Chevrolet Spark LS, VIN: KL8CB6SA8MC704136, registered to and owned by Anthony Bruey;

    d.    a 2020 Honda Talon, VIN: 1HFVE06A1L4001815, titled to and owned by Anthony Bruey;

    e.    a 2020 Polaris RZR, VIN: RF3YAV179LT035419, titled to and owned by Anthon Bruey; and

    f.    Real property located at 114 Kemp Lane, Hertford, North Carolina 27944, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

BEGINNING AT A POINT on the southern side of the Perquimans River, said point being at the northeastern corner of the Skinner property, thence in a southwestern direction along a fence, being the Skinner line, 295 feet to a chopped oak, thence in a southeasterly direction, a line parallel with said Perquimans River, 178 feet to a chopped oak; thence in a northerly direction, a straight line to a chopped gum, said gum being at the break of a swamp; and thence continuing on in a straight line from said oak and gum, to the Perquimans River; thence along the run of said river in a northwesterly direction back to the POINT OF BEGINNING. For reference and chain of title see Deed Book 109 Page 330 of the Perquimans County Registry.

ALSO CONVEYED HEREBY is a right of way to said above described property, across property of now or formerly R.E. Mathews, the same being 30 foot wide right of way and running from property of said Mathews, hitting the outer edge of the swamp located on the southeastern side of said above described property.

Designated Map No. 2-D061-0017-HB (PIN No. 7868-24-9352) in the Perquimans County Tax Office.

6. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

21

e.     has been commingled with other property which cannot be

divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C § 853(p), as incorporated by 18 U.S.C § 982(b)(1) and

28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

KARIN HOPPMANN
Acting United States Attorney

By: _____
Trenton J. Reichling
Assistant United States Attorney

By: _____
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

22

FORM OBD-34
August 21

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

AMBER REWIS BRUEY and
ANTHONY JAMES BRUEY

## INDICTMENT

Violations:   18 U.S.C. § 1349,
18 U.S.C. § 1343,
18 U.S.C. § 1956(h), and
18 U.S.C. § 1957.

A true bill,

_____
Foreperson

Filed in open court this 25th day
of August, 2021.

_____
Clerk

Bail $_____

GPO 863 525